**COMPOSITE EXHIBIT A**

# RETURN COPY



**D18530543**

## CITATION

**ALEXANDER GIPSON JR.**
**(Plaintiff)**

**VS**

**NATIONAL GENERAL INSURANCE**
**COMPANY**
**(Defendant)**

**NUMBER C-773437 "35"**

**19TH JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

TO:   NATIONAL GENERAL INSURANCE COMPANY
      THROUGH ITS AGENT:
      LOUISIANA SECRETARY OF STATE

GREETINGS:

Attached to this citation is a certified copy of a petition or other legal pleading that has been filed with the Clerk of Court for East Baton Rouge Parish ("Clerk of Court") and in which service upon you was requested by the filing party. Please read the petition for information concerning any claims that may have been asserted against you.

Pursuant to Louisiana Code of Civil Procedure Article 1001, you are required to file an answer to the petition or other legal pleading in the Clerk of Court's Civil Department located at 300 North Boulevard, Suite 3301, Baton Rouge, Louisiana, and you must do so within EITHER:
1. **21 DAYS** of the date you were served with the petition; **OR**
2. **30 DAYS** of the date you were served with both the petition and a discovery request. (*Note: If no discovery request was included with your petition, you must instead adhere to the 21-day deadline above.)

If you fail to file an answer or other legal pleading, a default judgment may be rendered against you. Any questions you may have seeking legal advice should be directed to an attorney at law, not the Clerk of Court. This citation was issued by the Clerk of Court for East Baton Rouge Parish on **JANUARY 28, 2026.**



*Ayauna Collins*

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

Served on the named party through the Louisiana Secretary of State on

**FEB 02 2026**

by tendering a copy of this document to:
JULIE NESBITT

BY  B. GARAFOLA #0577
served on the above named party as East Baton Rouge, LA
Deputy Sheriff, Parish

**Requesting Attorney: BERGERON, ROY L, JR**
*The following documents are attached:

PETITION; REQ FOR PROD AND INTERROGATORIES; EXHIBIT

| SERVICE INFORMATION: |
|---|

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20____ served on the above-named party as follows:
**PERSONAL SERVICE:** On the party herein named at _____.

**DOMICILIARY SERVICE:** On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

**SECRETARY OF STATE:** By tendering same to the within named, by handing same to _____.

**DUE AND DILIGENT:**   After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of East Baton Rouge, this _____ day of _____, 20_____.

SERVICE:$_____
MILEAGE$_____
TOTAL:  $_____

_____
Deputy Sheriff
Parish of East Baton Rouge

**CITATION-2000**

RECEIVED

East Baton Rouge Sheriff Office

JAN 3 0 2026

# RETURN COPY



**D18530550**

## CITATION

| | |
|---|---|
| **ALEXANDER GIPSON JR.**<br>**(Plaintiff)** | **NUMBER C-773437 "35"** |
| | **19TH JUDICIAL DISTRICT COURT** |
| **VS** | |
| | **PARISH OF EAST BATON ROUGE** |
| **NATIONAL GENERAL INSURANCE**<br>**COMPANY**<br>**(Defendant)** | **STATE OF LOUISIANA** |

**TO:    INTEGON INDEMNITY CORPORATION**
**THROUGH ITS AGENT:**
**LOUISIANA SECRETARY OF STATE**

GREETINGS:

Attached to this citation is a certified copy of a petition or other legal pleading that has been filed with the Clerk of Court for East Baton Rouge Parish ("Clerk of Court") and in which service upon you was requested by the filing party. Please read the petition for information concerning any claims that may have been asserted against you.

Pursuant to Louisiana Code of Civil Procedure Article 1001, you are required to file an answer to the petition or other legal pleading in the Clerk of Court's Civil Department located at 300 North Boulevard, Suite 3301, Baton Rouge, Louisiana, and you must do so within EITHER:
1. **21 DAYS** of the date you were served with the petition; **OR**
2. **30 DAYS** of the date you were served with both the petition and a discovery request. (\*Note: If no discovery request was included with your petition, you must instead adhere to the 21-day deadline above.)

If you fail to file an answer or other legal pleading, a default judgment may be rendered against you. Any questions you may have seeking legal advice should be directed to an attorney at law, not the Clerk of Court. This citation was issued by the Clerk of Court for East Baton Rouge Parish on **JANUARY 28, 2026.**



*Ayanna Collins*

*Deputy Clerk of Court for*
**Doug Welborn, Clerk of Court**

**Requesting Attorney: BERGERON, ROY L, JR**
\*The following documents are attached:

I made service on the named party through the Office of the Secretary of State on

FEB 02 2026

by tendering a copy of this document to:
JULIE NESBITT

**PETITION; REQ FOR PROD AND INTERROGATORIES; EXHIBIT**

served on the above named party #0577

**SERVICE INFORMATION:**

DY. B. GARAFOLA #0577
Sheriff, Parish of East Baton Rouge, LA

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____, served as follows:
**PERSONAL SERVICE:** On the party herein named at _____.

**DOMICILIARY SERVICE:** On the within named _____, by leaving the same at his domicile in this parish in the hands of _____, a person of suitable age and discretion residing in the said domicile at _____.

**SECRETARY OF STATE:** By tendering same to the within named, by handing same to _____.

**DUE AND DILIGENT:**    After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

**RETURNED:** Parish of East Baton Rouge, this _____ day of _____, 20_____.

SERVICE:$_____
MILEAGE$_____
TOTAL: $_____

_____
Deputy Sheriff
Parish of East Baton Rouge

**CITATION-2000**

RECEIVED
East Baton Rouge Sheriff Office
JAN 3 0 2026

EAST BATON ROUGE PARISH    C-772433
Filed Jan 28, 2026 8:14 AM    35
Deputy Clerk of Court
E-File Received Jan 27, 2026 4:31 PM

| | |
|---|---|
| **ALEXANDER GIPSON JR.** | **SUIT NO. _____    SEC. _____** |
| **VERSUS** | **19TH JUDICIAL DISTRICT COURT** |
| **NATIONAL GENERAL INSURANCE COMPANY AND INTEGON INDEMNITY CORPORATION** | **PARISH OF EAST BATON ROUGE**<br>**STATE OF LOUISIANA** |

## PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes plaintiff Alexander Gipson Jr., a major domiciled in the State of Texas, who files this Petition for Damages by assignment from Kisha Paul, and who respectfully represents as follows:

1.

Made defendants herein are the following:

a)    **NATIONAL GENERAL INSURANCE COMPANY**, a foreign insurance company licensed to do and doing business in the State of Louisiana, which may be served through its agent for service of process, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana 70809; and

b)    **INTEGON INDEMNITY CORPORATION**, a foreign insurance company licensed to do and doing business in the State of Louisiana, which may be served through its agent for service of process, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana 70809.

2.

Venue is proper in East Baton Rouge Parish, Louisiana, as to the defendants under the provisions of La. Code Civ. Proc. Art. 42 *et seq.*

3.

Defendants National General Insurance Company and Integon Indemnity Corporation are liable individually, jointly, and solidarily unto the plaintiff for the following, to-wit:

4.

The underlying lawsuit that gave rise to this matter, *Alexander Gipson Jr. v. National General Insurance Company, et al.*, No. C-741245, 19th Judicial District Court for the Parish of

1

East Baton Rouge, State of Louisiana, arose out of a motor vehicle collision on July 23, 2023, in which Kisha Paul collided with the motorcycle being operated by Alexander Gipson Jr., at the intersection of Airline Highway and Evangeline Street in Baton Rouge, Louisiana. This collision resulted in significant, debilitating, and life-threatening injuries to Alexander Gipson Jr., including multiple fractures, head injuries, a stroke, brain damage, and permanent disabilities which require continuing care, therapy, and treatment.

5.

At all times pertinent hereto, specifically on the date of the collision on July 23, 2023, National General Insurance Company had in full force and effect a policy of automobile liability insurance underwritten by Integon Indemnity Corporation, providing coverage and protection for the claims asserted by Alexander Gipson Jr. against Kisha Paul for damages he sustained as a result of the collision.

6.

National General Insurance Company and Integon Indemnity Corporation are hereinafter referred to collectively as "National General."

7.

Despite the fact that National General had in effect an automobile liability insurance policy which provided coverage to its insured Kisha Paul on the date of the collision, and despite owing a duty of good faith and fair dealing to its insured Kisha Paul, including but not limited to a duty to make reasonable efforts to settle claims that may be brought against her, National General breached those duties and failed to settle the claims that Alexander Gipson Jr. had against Kisha Paul for his personal injuries caused by the collision.

8.

At all pertinent times before the decision was made to file suit and proceed to a judgment, Alexander Gipson Jr. was willing to resolve all claims he had against Kisha Paul and National General, but as a result of National General's breach of its duties to Kisha Paul, Alexander Gipson Jr. filed a lawsuit against Kisha Paul and National General for the injuries he sustained as a result of the automobile collision.

2

9.

Following a trial on the merits in the underlying lawsuit arising from the collision, the court signed a judgment on November 7, 2025, which the clerk mailed to the parties on November 12, 2025, in favor of Alexander Gipson Jr. against National General and Kisha Paul in the amount of $15,000.00, plus legal interest on that amount from the date of judicial demand until paid and costs, as well as against Kisha Paul individually in the amount of $12,342,446.16, plus legal interest on that amount from the date of judicial demand until paid. The judgment further provided that Kisha Paul would receive a credit against the amount owed by her to Alexander Gipson Jr. under the judgment for any amounts paid by National General to Alexander Gipson Jr. This judgment was the direct and proximate result of the breaches of the duties owed by National General to its insured, Kisha Paul.

10.

Following the entry of the judgment by the 19th Judicial District Court, National General paid to Alexander Gipson Jr. the amount of its $15,000.00 automobile liability insurance policy coverage plus legal interest on that amount from the date of judicial demand until paid and court costs. However, the remainder of the judgment, specifically that portion of the judgment in excess of the $15,000.00 policy limits which was entered solely against Kisha Paul individually, plus interest on that amount from the date of judicial demand until paid, has not been paid and remains outstanding, accruing additional interest at the rate of $2,536.12 every day.

11.

The final day for taking a suspensive appeal from the judgment entered against Kisha Paul was December 19, 2025, and the final day for taking a devolutive appeal from that judgment was January 19, 2025. Therefore, the judgment entered against Kisha Paul is final and enforceable.

12.

It is well settled under Louisiana law that a liability insurer owes a fiduciary duty to its insured, and the insurer, when handling claims, "must carefully consider the interests of its insured, instead of only consulting its own self-interests, when handling and settling claims in order to protect the insured from exposure to excess liability." *Smith v. Citadel Ins. Co.*, 2019-00052, p. 7

3

(La. 10/22/19); 285 So. 3d 1062, 1067 (quoting *Holtzclaw v. Falco, Inc.*, 355 So. 2d 1279, 1283–84 (La. 1977)).

13.

Thus, a liability insurer owes its insured the duty to act in good faith and to deal fairly in handling claims. *See, e.g., Kelly v. State Farm Fire & Cas. Co.*, 2014-1921 (La. 05/05/15); 169 So. 3d 328. This "duty of good faith is an outgrowth of the contractual and fiduciary relationship between the insured and the insurer, and the duty of good faith and fair dealing emanates from the contract between the parties." *Smith,* 285 So. 3d at 1069.

14.

The longstanding Louisiana jurisprudential rules regarding the duties owed by an insurer to act in good faith in protecting its insured from an excess judgment were, without supplanting the jurisprudence, codified in La. R.S. 22:1973. Although La. R.S. 22:1973 was later repealed and its language incorporated into La. R.S. 22:1892, at all times pertinent to the allegations of this petition, La. R.S. 22:1973 was in force and effect such that it governs and applies to the allegations and causes of action set forth herein.

15.

At all times pertinent to the allegations of this petition, La. R.S. 22:1973(A) provided in pertinent part as follows:

> An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

16.

The Louisiana jurisprudence makes it clear that an insurer's affirmative duty includes a duty to makes efforts to settle claims even if no demand is made. *See, e.g., Kelly,* 169 So. 3d at 341.

17.

At all times pertinent to the allegations of this petition, La. R.S. 22:1973(C) provided in pertinent part as follows:

4

In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

18.

National General breached its duties owed to its insured Kisha Paul through the following facts and circumstances.

19.

On the day of the collision, July 23, 2023, Kisha Paul contacted National General by telephone to report the collision. In that recorded telephone call, she told National General that the other driver involved in the collision was on a motorcycle, that he had been taken to the hospital, and that he was "lucky to be living."

20.

National General obtained a copy of the crash report for the collision early in its evaluation of the claims. On August 4, 2023, Alexius Richard, Alexander Gipson Jr.'s sister, e-mailed a copy of the crash report to National General's property damage adjuster John Bell, who upon information and belief placed the crash report into the claim file where it was available to all other adjusters handling claims arising from the collision.

21.

The depiction of the collision in the crash report showed that the collision occurred when Kisha Paul was traveling south in the left travel lane of Airline Highway and made an illegal maneuver by proceeding across the right travel lane and entering into the right turn lane in an effort to make a right onto Evangeline Street into the path of Alexander Gipson Jr., who was already in the right turn lane. The crash report further indicated that Kisha Paul's actions at the time of the collision constituted a failure to yield the right of way, which was the cause of the collision, and that Alexander Gipson Jr. had "no contributing action."

22.

The crash report in National General's possession established that, according to the investigating officer and based on the version of the incident explained by Kisha Paul, her conduct

5

was in violation of the law and the sole causative factor in causing the collision. Upon information and belief, National General had no other information in its possession that was inconsistent with these findings and no basis to disagree with the statements in the police report. Even if National General chose to question the police officer's assessment of 100% of the fault to Ms. Paul, it had facts in its possession that established that its insured would bear a significant amount of the fault for causing the collision and, as a result, the injuries sustained by Alexander Gipson Jr.

23.

Prior to filing the underlying automobile collision suit against Kisha Paul and National General, Alexander Gipson Jr., through his sister, Alexius Richard, who at all times was authorized to act on his behalf, repeatedly communicated a desire by Alexander Gipson Jr. to resolve the claims against Kisha Paul and her insurer within the policy limits and made repeated proactive efforts to do so without having to file suit. In furtherance of these efforts, Alexius Richard had numerous communications with National General and provided it with evidence of the extent of Alexander Gipson Jr.'s injuries and the damages he suffered as a result of the collision.

24.

Specifically, on or about August 7, 2023, Alexius Richard spoke with National General adjuster Carly Jackson, who informed Alexius Richard that National General had accepted liability for the automobile collision. Despite that determination and information already in its possession, National General made no efforts at that point to resolve the claims of Alexander Gipson Jr. against its insured.

25.

On or about August 21, 2023, Alexius Richard provided medical records and photographs to National General showing that as a result of the collision caused by its insured, Alexander Gipson Jr. had suffered, among numerous other injuries, a left humeral shaft fracture, traumatic fractures of the left occipital condyle and anterior cortex of the foramen magnum, multiple acute left-sided rib fractures, and a right MCA ischemic stroke.

26.

Despite National General's own fault determination and receipt of these medical records

6

and photographs, which provided it with sufficient proof of the significant injuries that Alexander Gipson Jr. sustained in the collision and established that his general damages alone would far exceed both the available $15,000.00 policy limits even considering any potential exclusion of the first $15,000.00 in damages under Louisiana's no pay no play law, thereby exposing its insured Kisha Paul to a significant excess judgment if the claims against her were not resolved, National General failed to make any efforts, and certainly no reasonable efforts, to settle Alexander Gipson Jr.'s claims against Kisha Paul.

27.

On or about September 11, 2023, Alexius Richard sent National General a video of herself with Alexander Gipson Jr., who at the time was still hospitalized for the injuries he sustained a month and a half prior in the July 23, 2023 collision. In that video, Alexander Gipson Jr. verbally confirmed his relationship to his sister and further confirmed that he authorized her to continue discussing his claim with National General. Despite receipt of that video, which further evidenced the significance of the injuries that Alexander Gipson Jr. had suffered as a result of the collision, and his ongoing hospitalization and treatment needs, which further increased the exposure that its insured would face if the claim were not resolved, National General still made no efforts, and certainly no reasonable efforts, to resolve the claim to protect its insured from litigation and a certain excess judgment.

28.

After National General had received the above referenced crash report, medical records, photographs, and video, but had still failed to take any affirmative steps to resolve Alexander Gipson Jr.'s claim, Alexius Richard contacted National General near the end of September 2023 to inquire about the status of Alexander Gipson Jr.'s claim and to advise that his medical bills now exceeded $800,000.00, which certainly would have seemed appropriate in light of his injuries and the established lengthy hospital stay. Despite having previously received sufficient evidence to establish the significant pain and suffering and other injuries he had sustained and its knowledge of the medical bills which would have inevitably resulted from the longstanding hospitalization of which National General was aware, National General refused to make any offer to settle his claim

7

against it and its insured, and instead arbitrarily, capriciously, and without probable cause required that Alexander Gipson Jr. provide itemized medical bills before it would even consider making an offer.

29.

On Friday, October 20, 2023, despite numerous communications and efforts on behalf of Alexander Gipson Jr. to resolve the matter, and having still received no response and no offer of settlement from National General for nearly three months following the collision despite its prior receipt of the above referenced crash report, medical records, photographs, and video, all of which provided National General with more than enough evidence of Alexander Gipson Jr.'s significant injuries and ongoing treatment caused by the collision to warrant settling his claim for the available minimum policy limits, Alexius Richard provided National General with medical bills along with a final time-limited demand that National General pay its policy limits to Alexander Gipson Jr. by no later than Friday, October 27, 2023. In that same correspondence, National General was specifically advised that if it failed to pay its policy limits by October 27, 2023, Alexander Gipson Jr. would retain an attorney and file suit. By the time National General received this demand, it had known from the date of the incident and as further verified over time of the severity of his injuries and still had not made any efforts to resolve the policy limits claim.

30.

Despite that specific time limited demand which set a date certain of October 27, 2023, by which National General was specifically told that it must pay its policy limits to Alexander Gipson Jr. in exchange for a release of it and its insured or that Alexander Gipson Jr. would retain counsel and file suit, National General still failed to do so.

31.

Even though in light of the ongoing communications in the matter National General was aware that it could fully resolve the matter and protect its insured from litigation and the risk of an excess judgment by making this payment, instead of paying its policy limits as specifically demanded in the October 20, 2023 letter, or even immediately asking for a clarification, National General waited until October 26, 2023, to send an e-mail to Alexius Richard with a release,

8

knowing at that point this made it impossible to make a timely payment under the demand, and required that it be signed before the check would be issued. Even assuming National General required a release, had it, knowing what it did in this case, sent the release on October 20, 2023 with a request that it be signed immediately and returned, it could have still complied with the time limit set forth in the October 20, 2023 demand. Particularly considering National General's prior breaches of its duties described above, by failing to take reasonable steps to comply with the demand, that failure constituted a rejection of the October 20, 2023 demand.

32.

Contrary to National General's stated position that it would not make a payment until it received a signed release, it eventually did issue a check dated November 14, 2023, for $15,000.00 to Alexander Gipson Jr. However, when that check was issued, the time-limited demand had already expired, and Alexander Gipson Jr. had already retained counsel to file suit, just as National General had been advised would happen in the October 20, 2023 letter. The check was therefore returned to National General and its untimely effort to accept the time-limited demand by issuing a check after October 27, 2023 was rejected.

33.

Not only was the November 14, 2023 check issued well after Alexander Gipson Jr.'s time-limited demand expired on October 27, 2023, but it was also issued without National General having received a signed release from Alexander Gipson Jr. Thus, National General's issuance of that check without a signed release establishes that there was nothing preventing it from paying its policy limits to Alexander Gipson Jr. before the expiration of his demand on October 27, 2023. Instead, National General arbitrarily, capriciously, and without probable cause insisted on a signed release before issuing the check, despite knowing that Alexander Gipson Jr. intended to retain counsel and file suit if policy limits were not paid on or before October 27, 2023, exposing its insured to litigation and a likely excess judgment.

34.

The fact that National General's conduct was arbitrary, capricious, and without probable cause is further highlighted by the fact that, during the same time that it refused to make reasonable

9

efforts to resolve Alexander Gipson Jr.'s claims against its insured, National General was actively taking steps to resolve the claims of Trevia Brown, the passenger in Kisha Paul's vehicle whose injuries were far less severe than those of Alexander Gipson Jr. and who therefore presented less of a risk of exposure to an excess judgment to Kisha Paul than was presented by Alexander Gipson Jr.'s unresolved claims.

35.

National General prepared a release for Trevia Brown which it dated as October 20, 2023, the same date that Alexander Gipson Jr. made the final time-limited demand upon National General for payment of policy limits by October 27, 2023. Based on that date it appears that the settlement discussions between Trevia Brown and National General began before October 20, 2023, and that when Trevia Brown agreed to accept less than the policy limits, a release was issued to her. However, as it was evident that Alexander Gipson Jr. would not allow National General to save anything on its policy coverage available for his claims, National General rejected the numerous requests that had been presented to it over the prior three months to resolve his claims and made no other efforts to resolve his claims as it was legally obligated to do until it was too late.

36.

National General's release with Trevia Brown was executed on November 3, 2023, which was before National General made its untimely issuance of the check for policy limits to Alexander Gipson Jr. on November 14, 2023.

37.

The fact that National General apparently engaged in active efforts to settle with the injured passenger in Kisha Paul's vehicle, who would take less than policy limits, also establishes that its own evaluation was that its insured had liability for the collision, as National General had previously communicated to Alexander Gipson Jr.'s sister. Despite having reached that conclusion, National General still undertook no affirmative efforts to settle with Alexander Gipson Jr., forcing him to make a time-limited demand upon National General, with which it still refused to timely comply.

10

38.

Because National General failed to make reasonable efforts to settle Alexander Gipson Jr.'s claims against its insured, and because it failed to timely comply with the time-limited demand made by Alexander Gipson Jr. to pay its policy limits by October 27, 2023 in exchange for a release, when it had sufficient proof of the significant losses he sustained, Alexander Gipson Jr. was forced to retain counsel and file a lawsuit against National General's insured, Kisha Paul, and against National General for the damages to which he was entitled for the injuries he sustained in the collision.

39.

After the judgment was entered against Kisha Paul individually in the amount of $12,342,446.16 plus legal interest on that amount from the date of judicial demand until paid, but before that judgment became enforceable, Alexander Gipson Jr. offered National General one final opportunity to protect its insured by settling with Alexander Gipson Jr. and paying the amount of the judgment entered against Kisha Paul plus interest before the suspensive appeal delays had run and the judgment thereby became enforceable against her. National General once again refused to take any steps to protect its insured's interests and rejected the settlement offer that would prevent the judgment from becoming enforceable and expose her to further damages through the continuing accrual of significant legal interest and by having an enforceable judgment against her.

40.

The above alleged acts and omissions by National General were in violation of its duties owed to Kisha Paul under her insurance policy and under Louisiana law, including but not limited to the jurisprudence and La. R.S. 22:1973.

41.

The above alleged acts and omissions by National General caused Alexander Gipson Jr. to file suit against Kisha Paul and obtain a significant excess judgment against her. The entry of that judgment against Kisha Paul was avoidable, and in fact would have been avoided, had National General fulfilled its duties of good faith and fair dealing and made reasonable efforts to settle the claims that Alexander Gipson Jr. had against Kisha Paul.

11

42.

As a direct and proximate result of the above alleged acts and omissions by National General and its breach of its duty of good faith and fair dealing, Kisha Paul suffered and continues to suffer damages for which National General is liable, and which the plaintiff is entitled to recover pursuant to assignment of said claims from Kisha Paul, including:

a)    The total amount of the excess judgment entered against Kisha Paul of $12,342,446.16, plus legal interest on that amount from the date of judicial demand until paid, which continues to accrue daily against Kisha Paul at the daily rate of $2,536.12;

b)    Mental anguish, inconvenience, harassment, and distress;

c)    Statutory penalties of up to two times the amount of the damages caused by National General's breach, pursuant to La. R.S. 22:1973(C); and

d)    Any and all other damages, penalties, or other amounts available under the facts and the law to be proven at the trial of this cause.

43.

Following the entry of the excess judgment against her and after all delays for taking a suspensive appeal of that judgment had run, Kisha Paul assigned all of her rights, claims, and causes of action against National General to Alexander Gipson Jr., pursuant to Louisiana law, including but not limited to La. Civ. Code art. 2642 and *Smith v. Citadel Ins. Co.*, 2019-00052 (La. 10/22/19); 285 So. 3d 1062. Pursuant to that assignment, Alexander Gipson Jr. steps into her shoes and can assert all rights, claims, and causes of action against National General that were available to Kisha Paul, including such rights, claims, and causes of action available under Louisiana jurisprudence and La. R.S. 22:1973 for National General's breach of its duty of good faith and fair dealing owed to Kisha Paul and its failure to make a reasonable effort to settle claims against her. Additionally, in furtherance of this action, Kisha Paul waived her privilege related to the underlying automobile collision and National General's handling of the claims arising from that collision.

44.

Alexander Gipson Jr. hereby claims all such damages and other amounts to which the insured Kisha Paul has been and continues to be subjected and which, save the assignment, she would have been entitled to recover as a result of such breaches of the duty of good faith and fair

12

dealing by her insurer National General, and all such damages and other amounts as are recoverable under the law by the plaintiff as assignee of Kisha Paul's claims against National General, in such amount as may be ascertained by the finder of fact at trial, including but not limited to the amount of the judgment entered herein plus interest, other damages, penalties, and any and all other amounts which are available under the law.

45.

As required by article 893(A), the plaintiff alleges that his claim exceeds the requisite amount required to establish the right to a trial by jury, exclusive of interest and costs, if any party were to properly request a trial by jury.

WHEREFORE, plaintiff Alexander Gipson Jr., as assignee of Kisha Paul, prays that after expiration of all legal delays and due proceedings are had, there be a judgment rendered in his favor and against the defendants, National General Insurance Company and Integon Indemnity Corporation, jointly, severally, and solidarily, for all damages reasonable under the premises with legal interest thereon from the date of judicial demand until paid, for penalties, for all costs of these proceedings, expert witness fees, and any other damages, penalties, or sanctions reasonable under the premises.

Respectfully submitted:

_/s/ Roy Bergeron, Jr._
Simien & Simien, L.L.C.
Eulis Simien, Jr. Bar # 12077
Jimmy Simien, Bar # 1598
Roy Bergeron, Jr. Bar # 33726
Attorneys and Counselors at Law
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809
Email: PleadingService@simien.com
(225) 932-9221; (225) 932-9286 (fax)

and

John Bel Edwards, Bar # 26274
John Bel Edwards Law Firm, LLC
509 West Morris Avenue
Hammond, Louisiana 70403
Email: jbe@johnbeledwardslaw.com
Telephone: (225) 400-1265

13

**PLEASE SERVE WITH PETITION AND DISCOVERY REQUESTS:**

**NATIONAL GENERAL INSURANCE COMPANY**
through its agent for service of process
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

**INTEGON INDEMNITY CORPORATION**
through its agent for service of process
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

14


(/Content/Help/helpv7.pdf)

Clerk Connect - East Baton Rouge Parish

Menu ▾          Lexi ▾

BACK TO PREVIOUS PAGE

C-773437

ALEXANDER GIPSON JR. VS

NATIONAL GENERAL INSURANCE COMPANY

Minu ▾          PURCHASE PDF

**Date Filed:** 01/28/2026          **Kind:** Civil          **Division:** 35

**Date Last Active:** 02/03/2026          **Cause:** DM-Damages          **Suit Status:** Active

**Judge:** MYERS, BRAD

| CHRONOLOGICAL HISTORY (8) | PARTIES (3) | ATTORNEYS (1) | MINUTES (0) | COURT EVEN |
|---|---|---|---|---|

| Date | Type<br>All | Description | Filed By |
|---|---|---|---|
| 02/03/2026 | | SERVICE RETURN FEE - NATIONAL GENERAL INSURANCE COMPANY | BERGERON, ROY L, JR |
| 02/03/2026 | | SERVICE RETURN FEE - INTEGON INDEMNITY CORPORATION | BERGERON, ROY L, JR |
| 02/02/2026 | Service Return | Intended For: NATIONAL GENERAL INSURANCE COMPANY<br>Item Served: CIT-CIV 2000<br>Served How: Secretary of State | |
| 02/02/2026 | Service Return | Intended For: INTEGON INDEMNITY CORPORATION<br>Item Served: CIT-CIV 2000<br>Served How: Secretary of State | |
| 01/28/2026 | Document | CIT-CIV 2000 - NATIONAL GENERAL INSURANCE COMPANY | |
| 01/28/2026 | Document | CIT-CIV 2000 - INTEGON INDEMNITY CORPORATION | |
| 01/28/2026 | | PET- DAMAGES -CIV | BERGERON, ROY L, JR |
| 01/28/2026 | | EXHIBIT-CV | BERGERON, ROY L, JR |

Version#3.0.41

Privacy • Terms

Case 3:26-cv-00209-JWD-RLB    Document 1-2    02/27/26    Page 21 of 24



(/Content/Help/helpv7.pdf)

Clerk Connect - East Baton Rouge
Parish

Menu ▾          Lexi ▾

| BACK TO PREVIOUS PAGE | C-773437 | Minu ▾ | PURCHASE PDF |

### C-773437

### ALEXANDER GIPSON JR. VS

### NATIONAL GENERAL INSURANCE COMPANY

**Date Filed:** 01/28/2026            **Kind:** Civil                **Division:** 35

**Date Last Active:** 02/03/2026      **Cause:** DM-Damages          **Suit Status:** Active

**Judge:** MYERS, BRAD

CHRONOLOGICAL HISTORY (8)    PARTIES (3)    ATTORNEYS (1)    MINUTES (0)    COURT EVEN

| Type | Name | Primary Attorney | Billing Method |
|------|------|-----------------|----------------|
| Plaintiff | GIPSON JR., ALEXANDER | BERGERON, ROY L, JR | Paying |
| Defendant | NATIONAL GENERAL INSURANCE COMPANY | | Paying |
| Defendant | INTEGON INDEMNITY CORPORATION | | Paying |

Version#3.0.41

Privacy • Terms

Case 3:26-cv-00209-JWD-RLB    Document 1-2    02/27/26    Page 22 of 24


(/Content/Help/helpv7.pdf)

Clerk Connect - East Baton Rouge Parish

Menu ▾        Lexi ▾

BACK TO PREVIOUS PAGE

## C-773437

## ALEXANDER GIPSON JR. VS

## NATIONAL GENERAL INSURANCE COMPANY

Minu ▾     PURCHASE PDF

**Date Filed:** 01/28/2026

**Date Last Active:** 02/03/2026

**Judge:** MYERS, BRAD

**Kind:** Civil

**Cause:** DM-Damages

**Division:** 35

**Suit Status:** Active

CHRONOLOGICAL HISTORY (8)    PARTIES (3)    **ATTORNEYS (1)**    MINUTES (0)    COURT EVEN

| Attorney Name | Party Name | Begin Date | End Date | |
|---|---|---|---|---|
| BERGERON, ROY L, JR | GIPSON JR., ALEXANDER | 1/28/2026 | | View Details |

Version#3.0.41

Privacy • Terms

Case 3:26-cv-00209-JWD-RLB    Document 1-2    02/27/26    Page 23 of 24


(/Content/Help/helpv7.pdf)

Menu ▾          Lexi ▾

BACK TO PREVIOUS PAGE

## C-773437
## ALEXANDER GIPSON JR. VS
## NATIONAL GENERAL INSURANCE COMPANY

Minute ▾   PURCHASE PDF

**Date Filed:** 01/28/2026

**Date Last Active:** 02/03/2026

**Judge:** MYERS, BRAD

**Kind:** Civil

**Cause:** DM-Damages

**Division:** 35

**Suit Status:** Active

CHRONOLOGICAL HISTORY (8)     PARTIES (3)     ATTORNEYS (1)     MINUTES (0)     COURT EVENTS (0

| Date ❯ | Sent To | Document |
|---|---|---|
| 01/28/2026 | NATIONAL GENERAL INSURANCE COMPANY | CIT-CIV 2000 |
| 01/28/2026 | INTEGON INDEMNITY CORPORATION | CIT-CIV 2000 |

Version#3.0.41

Privacy • Terms

Case 3:26-cv-00209-JWD-RLB    Document 1-2    02/27/26    Page 24 of 24

Clerk Connect - a Multi-Parish Clerk of Court online access portal

  (/Content/Help/helpv7.pdf) Clerk Connect - East Baton Rouge Parish

Menu ▾                     Lexi ▾

| BACK TO PREVIOUS PAGE | C-773437<br>ALEXANDER GIPSON JR. VS<br>NATIONAL GENERAL INSURANCE COMPANY | Minutes ▾  PURCHASE PDF |

**Date Filed:** 01/28/2026          **Kind:** Civil          **Division:** 35

**Date Last Active:** 02/03/2026          **Cause:** DM-Damages          **Suit Status:** Active

**Judge:** MYERS, BRAD

CHRONOLOGICAL HISTORY (8)    PARTIES (3)    ATTORNEYS (1)    MINUTES (0)    COURT EVENTS (0)    DOCUMENT HISTORY (

| Date ❤ | Item Served | Served How | Intended For | Memo |
|---|---|---|---|---|
| 02/02/2026 | CIT-CIV 2000 | Secretary of State | NATIONAL GENERAL INSURANCE COMPANY | NATIONAL GENERAL INSURANCE COMPANY |
| 02/02/2026 | CIT-CIV 2000 | Secretary of State | INTEGON INDEMNITY CORPORATION | INTEGON INDEMNITY CORPORATION |

Version#3.0.41

Privacy - Terms