UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALEXANDER GIPSON, JR. | CIVIL ACTION |
| VERSUS | |
| INTEGON INDEMNITY CORPORATION, ET AL. | NO. 26-209-JWD-RLB |

**ORDER**

Before the Court is National General Insurance Company and Integon Indemnity Corporation's (collectively, "Defendants") Motion to Overrule Plaintiff's Objections to Defendants' Subpoenas Duces Tecum to Alexius Richard, Ann Gipson, Simien & Simien, LLC, and John Bel Edwards Law Firm, LLC. (R. Doc. 77). The motion is opposed. (R. Doc. 87). Defendants have filed a Reply Memorandum in support of their motion. (R. Doc. 104).

## I. Background

This lawsuit arises from a November 7, 2025 judgment obtained by Plaintiff against National General, Integon, and Kisha Paul in a lawsuit concerning a motor vehicle collision between Alexander Gipson, Jr. ("Plaintiff") and Ms. Paul. (R. Doc. 27-5). Plaintiff obtained from Ms. Paul an assignment of rights to the remainder of the judgment in excess of the policy limits paid by National General. (R. Doc. 27-4).

On or about January 28, 2026, Plaintiff initiated this action, pursuant to the assignment of rights, against Defendants. (R. Doc. 1-2). Plaintiff alleges Defendants breached their duties of good faith and fair dealing by failing to make a reasonable effort to settle the claims Mr. Gipson had against Ms. Paul for his personal injuries caused by the collision. (R. Doc. 1-2 at 7). Defendants removed the action on February 27, 2026, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1). On April 15, 2026, Defendants filed their respective Answer and Affirmative Defenses to the Complaint, both raising the affirmative defense that Mr. Gipson lacked legal

capacity to contract and could not personally approve or execute a settlement. (R. Doc. 23 at 7; R. Doc. 24 at 7).

Plaintiff filed a Motion for Protective Order and/or Motion to Stay Discovery Regarding Defendants' Subpoena to Our Lady of the Lake and All Similar Discovery Related to Lack of Capacity on May 14, 2026, seeking a protective order and/or stay of discovery for all issues regarding Mr. Gipson's purported lack of capacity on the basis that lack of capacity is not a valid defense to an insured's claim for bad faith failure to settle under Louisiana law. (R. Doc. 41-2 at 6). The undersigned denied the motion on the basis that since the information is relevant to the alleged affirmative defense and proportionate with the needs of the case, it was not proper to litigate the validity of a defense in a discovery motion. (R. Doc. 82). The district judge affirmed the denial on September 1, 2026. (R. Doc. 102).

Plaintiff filed a Motion to Dismiss for Failure to State a Claim on May 15, 2026, arguing Defendants' counterclaims should be dismissed as redundant of the affirmative defenses, because defendants have failed to allege sufficient factual basis for the relief sought, and because the counterclaims are not supported by or available under Louisiana law. (R. Doc. 42). The motion is opposed (R. Doc. 55), and Plaintiff failed a reply in support of its motion (R. Doc. 60). The motion is currently pending in front of the district judge.

On May 22, 2026, Plaintiff filed a Motion for Partial Summary Judgment, seeking to dismiss the affirmative defenses alleged by Defendants. (R. Doc. 46). The Court denied the motion on September 1, 2026 and held that Plaintiff may move for summary judgment again following the close of discovery. (R. Doc. 102). The Court also entered a Confidentiality Order into the record on June 2, 2026. (R. Doc. 53).

On May 6, 2026, Defendants serviced Notices of Production from Non-Party, attaching proposed Subpoenas Duces Tecum to (1) Plaintiff's sister, Alexius Richard, (2) Plaintiff's mother,

Ann Gipson, and (3) Plaintiff's counsel in the underlying lawsuit, Simien & Simien, LLC and John Bel Edwards Law Firm, LLC. (R. Doc. 77-1 at 5). Plaintiff provided general objections to the requests for production rather than objecting to each request individually. (R. Doc. 77-12 at 3). Plaintiff objected on the basis that the requests (1) sought documents for improper purposes of harassment, unnecessary delay, needless increase of costs, and undue burden and expense on the plaintiff and the third-party subpoenaed person, (2) sought documents protected by attorney-client privilege and work product protections, (3) sought documents not relevant to a party's claim or defense, (4) sought documents not proportional to the needs of the case, (5) sought documents which can and should more properly be sought through discovery requests directed to Plaintiff, (6) sought documents obtainable from other sources that are more convenient, less burdensome, or less expensive, and (7) sought documents which implicate and infringe upon Plaintiff's privacy interests. (R. Doc. 77-12 at 3-4). Plaintiff further objected to the subpoenas directed to Plaintiff's counsel on the basis that Defendants cannot meet the heavy burdens imposed upon them to prove the discovery directed to attorneys is appropriate. (R. Doc. 77-14 at 5).

Defendants filed their Motion to Overrule Plaintiff's Objections to Defendants' Subpoenas Duces Tecum to Alexius Richard, Ann Gipson, Simien & Simien, LLC, and John Bel Edwards Law Firm, LLC on July 15, 2026. (R. Doc. 77). Defendants argue (1) the requests are relevant and reasonably tailored to the non-party recipient, (2) Plaintiff lacks standing to challenge the subpoenas on the basis of relevance, overbreadth, proportionality, and undue burden, (3) the requested communications between Plaintiff's counsel and Plaintiff's family members are not privileged as Plaintiff's family members are not "representatives" of Plaintiff, and (4) Plaintiff's boilerplate objections should be considered a waiver of his objections. (R. Doc. 77-1).

Plaintiff filed its opposition on August 5, 2026. (R. Doc. 87). Plaintiff argues (1) the instant motion is premature since the subpoenas have not yet been served on the non-parties, (2) the Court

should defer ruling on the instant motion until pending dispositive motions are decided, (3) the information sought from Plaintiff's counsel is available, or has already been obtained, from Plaintiff or other sources, (4) the requests are neither proportional nor properly directed at the non-party recipients, (5) Plaintiff has standing through protecting his privilege and through seeking a protective order, and (6) the requests seek information that is not relevant. (R. Doc. 87).

Defendants' Reply Memorandum was entered into the record on September 2, 2026. (R. Doc. 104). Defendants argue (1) the motion is not premature as the purpose of requiring a party to send a copy of the subpoena to the opposing party is to address the opposing party's objections, (2) the Court should not defer ruling and allow discovery as Defendants' affirmative defenses have not been struck nor have their claims been dismissed, (3) the discovery sought is relevant, and (4) the subpoenas directed at Plaintiff's counsel is proper since the subpoenas do not seek privileged information nor documents that constitute work product. (R. Doc. 104).

## II. Law & Analysis

### A. Legal Standards

A subpoena may command a non-party to produce designated documents, electronically stored information, or tangible things in his possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). Under Fed. R. Civ. P. 45, a party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense[.]" Fed. R. Civ. P. 45(d)(1). "The court for the district where compliance is required must enforce this duty and impose an appropriate sanction–which may include lost earnings and reasonable attorney's fees–on a party or attorney who fails to comply." *Id*.

A court must quash or modify a subpoena if it: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in [Fed. R. Civ. P.] 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver

applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d). On timely motion, the court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).

To determine whether a person is being subjected to undue burden, courts weigh "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered[ ]; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). The moving party has the burden of demonstrating that compliance with the subpoena would be unduly burdensome. *Id*. Courts "consider the expense and inconvenience to [a] non-party." *Id* (citations omitted).

Subpoenas issued for discovery purposes, such as those at issue here, are also subject to the discovery limitations outlined in Rule 26(b). *See Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 596 (E.D. Tex. 2003); 9A Wright & Miller, Federal Practice & Procedure 2d § 2459 ("Of course, the matter sought by the party issuing the subpoena must be reasonably calculated to lead to admissible evidence as is required by the last sentence of Rule 26(b)(1)."). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information is relevant if it "bears on, or ... reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party." *Coughlin v. Lee*, 946 F. 2d 1152, 1159 (5th Cir. 1991) (citation omitted).

The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

**B. Prematurity**

Plaintiff first argues that the instant motion is premature since the subpoenas have not been served to the non-party recipients. Plaintiff argues the instant motion is in actuality a motion to compel and that it is improper to compel the non-parties to reply to the subpoenas prior to the non-parties having the opportunity to object to the subpoenas. (R. Doc. 87 at 3). Plaintiff states, "The Court cannot 'overrule' objections the recipients have never made, nor compel production from persons never commanded to produce." (R. Doc. 87 at 3).

However, Defendants argue the instant motion is the very purpose of Rule 45(a)(4). Rule 45 states, in pertinent part, "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). Defendants state the purpose of the instant motion is solely to overrule Plaintiff's objections, not to compel the non-parties to respond, and any objections the non-party recipients have to the subpoenas would be addressed separately. (R. Doc. 104 at 2).

Further, Defendants assert Plaintiff's prematurity argument is contradicted in its objections to the subpoenas in which Plaintiff stated, "The plaintiff further objects to the issuance of the Subpoena or any modified version of the Subpoena unless and until the parties have attempted to meet and confer to attempt to resolve the plaintiff's objections, or if the parties are unable to resolve the dispute, until after the Court has ruled on the plaintiff's objections." (R. Doc. 104 at 2). The parties met and conferred regarding Plaintiff's objections and were unable to resolve the dispute, so Defendants filed the instant motion. (R. Doc. 104 at 2). The Court agrees with Defendants.

Plaintiff's cited case law refers to instances where the party sought a motion to compel responses by the non-party prior to the non-party being served with the subpoena, which Defendants

have not done.[1] "Defendants are not seeking to compel non-parties to do anything; they seek only to overrule Plaintiff's meritless objections in accordance with the procedure outlined by Plaintiff himself." (R. Doc. 104 at 3). Plaintiff cannot simultaneously request Defendants not serve the subpoena until the Court has made a determination on its objections, then argue the Court cannot make a determination on its objections because the Defendants have not served the subpoena. Plaintiff's prematurity argument has no merit.

**C. Standing**

Defendants assert that Plaintiff does not have standing to object to the requests on the basis of relevance, overbreadth, proportionality, or undue burden and may only assert arguments regarding Plaintiff's personal right or privilege in the requested information. (R. Doc. 77-1 at 16). "[A] plaintiff cannot challenge a Rule 45 subpoena directed to a third party on the basis that it violates another person's privacy rights ..., that the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds." *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016), quoting *Frazier v. RadioShack Corp.*, No. 10–855, 2012 WL 832285, at *1 (M.D. La. Mar. 12, 2012).

Therefore, if it is found that the requested documents are privileged, then Plaintiff would have a privacy interest, which constitutes a personal right, in the requested information and would therefore be able to quash the subpoena on that basis. *See Keybank Nat. Ass'n. v. Perkins Rowe Assocs., L.L.C.*, No. CIV.A. 09-497-JJB-SR, 2011 WL 90108, at *2 (M.D. La. Jan. 11, 2011) ("Generally speaking, a party has standing to challenge a subpoena issued to a non-party if the

[1] *McElvy v. Southewestern Corr., LLC*, No. 3:19-CV-1264-N, 2022 WL 20829114, at *1 (N.D. Tex. Mar. 10, 2022); *Advantage Roofing & Constr. of Louisiana, Inc. v. Landmark Am. Ins. Co.*, No. CV 16-677-JWD-RLB, 2017 WL 9285523, at *1 (M.D. La. Sept. 26, 2017); *Harco Nat. Ins. Co. v. Sleegers Eng'g, Inc.*, No. 06-CV-11314, 2014 WL 5421237, at *4 (E.D. Mich. Oct. 22, 2014); *Edwards v. Dwyer*, No. 1:06-CV-1 CAS, 2011 WL 13277528, at *2 (E.D. Mo. June 23, 2011).

subpoena seeks confidential or protected information sensitive to the movant."). However, Plaintiff argues it has standing pursuant to Rule 26(c) to challenge the subpoena beyond its arguments on the basis of privilege. (R. Doc. 87 at 11).

"Although a party does not have standing under Rule 45 to challenge burden or relevance in the absence of a personal right or privilege with respect to the materials subpoenaed, a party does have standing to challenge relevance under Rule 26(c)." Cr*escent City Remodeling, LLC v. CMR Constr. & Roofing, LLC*, 643 F. Supp. 3d 613, 618 (E.D. La. 2022) (citing *Bounds*, 314 F.R.D. at 218). To challenge relevance under Rule 26(c), Plaintiff must request a protective order. Plaintiff previously sought a motion for a protective order seeking to prevent Defendants from issuing discovery "related to [Plaintiff's] purported lack of capacity," arguing Plaintiff's lack of capacity was not known at the time of the Defendants' conduct and therefore cannot be considered in the Court's bad faith analysis. (R. Doc. 41). The court denied the motion, stating it is not proper to determine the merits of a raised affirmative defense in a discovery motion and that the requested information was within the scope of discovery and proportionate to the needs of the case. (R. Doc. 82).

Since Plaintiff has not requested another protective order, Plaintiff is solely challenging the subpoena under Rule 45 and therefore cannot challenge the subpoena on the basis of relevance, overbreadth, proportionality, or undue burden. *See Wilkerson v. Stalder*, No. CIV.A. 00-304-JJB, 2015 WL 2236417, at *3 (M.D. La. May 12, 2015) ("Here, Plaintiffs have standing because they have moved for a protective order pursuant to Rule 26(c) to limit the scope of discovery to exclude the depositions of Ms. Pegram and Mr. Rahim, rather than for an order pursuant to Rule 45(d) quashing the underlying subpoenas."). Primarily, the Court will only consider Plaintiff's arguments regarding privilege as this is the only basis upon which Plaintiff may object to the subpoena at this time. However, the Court recognizes that the subpoenas in question request documents from

Plaintiff's counsel who raised the current relevancy and overbreadth arguments. To minimize delays in discovery and the need for further court intervention, the Court will address Plaintiff's arguments where the Court deems appropriate.

### D. Attorney-Client Privilege

Rule 501 of the Federal Rules of Evidence requires a federal court sitting in diversity to apply the appropriate state's law concerning the scope and application of the claimed attorney-client privilege. The attorney-client privilege protects certain documents from disclosure:

> The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26. For a communication to be protected under the privilege, the proponent must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding. Determining the applicability of the privilege is a "highly fact-specific" inquiry, and the party asserting the privilege bears the burden of proof. Once the privilege has been established, the burden shifts to the other party to prove any applicable exceptions. Ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent.

*Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (cleaned up). "[W]hile courts historically applied state law to the issue of waiver as well, Rule 502(f) of the Federal Rules of Evidence now expressly provides that Rule 502 governs the waiver issue even when state law provides the rule of decision." *Dveirin v. State Farm Fire & Cas. Co.*, No. CV 23-5146, 2025 WL 1371824, at *8 (E.D. La. Feb. 19, 2025), *report and recommendation adopted sub nom. Dveirin v. State Farm Fire & Cas. Ins. Co.*, No. CV 23-5146, 2025 WL 1062557 (E.D. La. Apr. 9, 2025).

A representative of the client is "[a] person having authority to obtain professional legal services, or to act on advice so obtained, on behalf of the client," or "[a]ny other person who makes or receives a confidential communication for the purpose of effectuating legal representation for the client, while acting in the scope of employment for the client." La. Code Evid. art. 506(A)(2), (4). A waiver of attorney-client privilege does not occur when privileged communications are disclosed to

representatives "whose services are necessary for effective [legal] representation of the client's interests." *Dveirin*, 2025 WL 1371824, at *14. The party asserting the privilege has the burden of proving its applicability and that a waiver has not occurred. *Smith v. Kavanaugh, Pierson & Talley,* 513 So.2d 1138, 1143 (La.9/9/87).

Counsel for Plaintiff generally argues that communications between counsel and Plaintiff's sister and parents are protected since these family members were Plaintiff's representatives. (R. Doc. 87 at 12-15). The Court agrees. Plaintiff's sister and parents were acting as Plaintiff's representatives in the litigation of this matter, and therefore, communications between Plaintiff's counsel and Plaintiff's sister and parents are entitled to attorney-client privilege.

However, Defendant did not provide a privilege log or otherwise identify any particular documents that may be protected. "Defendant's broad reference to the attorney-client/work-product privilege is useless absent reference to specific documents." *See Alfred v. Duhe*, No. 6:24-CV-00274, 2025 WL 2177831, at *6 (W.D. La. July 31, 2025), *aff'd*, No. 6:24-CV-00274, 2025 WL 2941124 (W.D. La. Oct. 16, 2025). In his Opposition, Plaintiff states that a privilege log is not yet required because the subpoenas have not been served, so no responses are due, meaning no documents have yet been withheld. (R. Doc. 87 at 10). Upon service of the subpoenas, Plaintiff is required to provide a privilege log identifying any withheld documents. After review of the privilege log, Defendants shall confer with Plaintiff regarding any perceived deficiencies prior to requesting further court intervention.

**E. Work Product Doctrine**

Additionally, Plaintiff claims the information responsive to Defendants' requests for documents pertaining to the drafting, content, strategy, and transmission of the October 20, 2023 demand, counsel's communications with deposition and trial witnesses, and the negotiation and drafting strategy for the January 7, 2026 assignment is protected work product. (R. Doc. 87 at 9).

Federal law governs whether the document is immune from discovery under the work product doctrine. *Id*. (citing Fed. R. Evid. 502 ("The following provisions apply, in the circumstance set out, to disclosure of a communication or information covered by the attorney-client privilege or work-production protection."). The work-product rule, set forth in Rule 26(b)(3)(A), protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The work product protection is broader in scope and reach than the attorney client privilege. The attorney client privilege "extends only to client communications, while the work product protection encompasses much that has its source outside client communications." *Stoffels v. SBC Communications, Inc.,* 263 F.R.D. 406, 412 (S.D. Tex. 2009).

Rule 26(b)(3) distinguishes between "ordinary" and "opinion" work product. The party seeking disclosure of opinion work product is subject to a higher burden because opinion work product reveals the "mental impressions, conclusions, opinions, or legal theories of an attorney." *Conoco Inc. v. Boh Bros. Const. Co.,* 191 F.R.D. 107, 118 (quotations omitted). This protection is not absolute, however. Like the attorney client privilege, opinion work product may be disclosed when the holder waives the protection by placing the protected material "at issue" in the litigation. *Id.* at 117. The party seeking discovery of opinion work product must show a compelling need for the information and an inability to obtain it otherwise. Fed. R. Civ. P. 26(b)(3).

Again, Plaintiff did not provide a privilege log or otherwise identify any particular documents possessed by non-parties that may be protected. Without further information regarding the content of documents responsive to Defendants' requests, the Court cannot make a determination regarding the application of the work product doctrine. The Court will therefore defer ruling on the application of the work product doctrine to specific documents upon production of a

privilege log. Upon service of the subpoenas, Plaintiff is required to provide a privilege log identifying any withheld documents. After review of the privilege log, Defendants shall confer with Plaintiff regarding any perceived deficiencies prior to requesting further Court intervention.

**F. Subpoena to Plaintiff's Counsel**

As the Supreme Court has observed, a lawyer must be able to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel ... and assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 510–511 (1947). The attorney-client privilege protects the confidentiality of communications within the attorney-client relationship, not the external trappings of the relationship, such as facts relating to the creation or existence of the attorney-client relationship. *Langer v. Presbyterian Medical Center of Philadelphia,* Nos. 87–4000, 91–1814, 88–1064, 1995 WL 79520, at *13 (E.D. Pa. February 17, 1995), *opinion vacated on other grounds on reconsideration,* 1995 WL at 395937 (E.D. Pa. July 3, 1995) ("It is well-established that the 'structural framework,' or 'external trappings' of the attorney-client relationship, as opposed to the substantive communications made during the relationship, are not privileged .... Thus, existence of the relationship, dates and general subjects of meetings, and the identity of persons at those meetings, are not privileged information.") (citations omitted).

There is not a general prohibition against issuing a subpoena to opposing party's counsel, and courts have allowed such a subpoena to an insured's counsel when an insurer's alleged bad faith is at issue. *See Thompson v. Cincinnati Ins. Co.,* No. 3:10CV318 RS EMT, 2010 WL 4667100, at *5 (N.D. Fla. Nov. 9, 2010); *Deary v. Progressive Am. Ins. Co.*, No. 20-80279-CIV, 2020 WL 6365015, at *3 (S.D. Fla. Aug. 25, 2020); *Northwood Nursing & Convalescent Home, Inc. v. Cont'l*

*Ins. Co.*, 161 F.R.D. 293, 298 (E.D. Pa. 1995); *Hydrojet Servs., Inc. v. Sentry Ins. Co.*, No. CV 20-4727-SWR, 2022 WL 2168438, at *6 (E.D. Pa. June 16, 2022).

Accordingly, the dates, times, and places of Plaintiff's, or his representatives', meetings with his attorney are not protected. *See Monroe's Estate v. Bottle Rock Power Corp.,* No. 03–2682, 2004 WL 737463, at * 11 (E.D. La. April 2, 2004) (in general, retainer agreements, the identity of clients, the purposes for which attorneys are retained, information relating to billing or fee arrangements, hours spent by attorneys working on the litigation, and payment of attorney's fees do not fall within either the attorney-client or the work-product privilege) (citations omitted); *see also Unites States v. Alexander,* 37 F.3d 1501 (7th Cir. 1994) (unpublished) (telephone records revealing that call was made to attorney are not privileged; only the substance of such a telephone call is privileged); *United States v. Kendrick,* 331 F.2d 110, 113 (4th Cir. 1964) ("It is the substance of the communications which is protected, however, not the fact that there have been communications."); *Colton v. United States,* 306 F.2d 633, 637–38 (2d Cir. 1962) (information about fees received, as well as existence and time frame within which attorney-client relationship existed, not privileged); *see also United States v. Jackson,* No. 07–35/RWR/AK, 2007 WL 4225403, at *2 (D.D.C. November 30, 2007) ("The existence of a communication between a client and her attorney is not privileged, even if the content of that communication would otherwise be protected .... Therefore the e-mail transaction log, which shows e-mail traffic between Jackson and her attorney ... is not protected by the attorney-client privilege.") (citations omitted).

Without further information regarding the contents of the documents being withheld, the court cannot ascertain whether the documents are protected by attorney-client privilege or work product doctrine. Since discovery is still ongoing, the Court will defer ruling on the application of attorney-client privilege or work product doctrine until a privilege log has been provided by Plaintiff. Based on the facts of this matter, specifically the allegations regarding Plaintiff's lack of

capacity and the purported bad faith set-up defense, Defendants are able to issue the subpoena as there is no blanket prohibition on sending a subpoena to opposing counsel.

**G. Specific Requests**

**1. Attorney Retention and Fee Agreements**

The Subpoenas seek "fee agreements, engagement letters, retainer agreements, and/or other documents memorializing the retention of Simien & Simien, L.L.C., John Bel Edwards Law Firm, LLC, or any other attorney or law firm by or on behalf of Alexander Gipson, Jr. in connection with claims arising from the July 23, 2023 motor vehicle collision." Exhibit H, Request No. 1; Exhibit I, Request No. 1; Exhibit F, Request No. 4; Exhibit G, Request No. 4.

Plaintiff does not have standing to object on the grounds of relevancy; however, the Court recognizes that the subpoenas in question request documents from Plaintiff's counsel who raised the current relevancy and overbreadth arguments. To minimize delays in discovery and the need for further court intervention, the Court will address Plaintiff's arguments. Defendants assert they are "entitled to know the date and terms of Plaintiff's retention of his attorneys, and to determine from documentary evidence when counsel became involved in Plaintiff's claims – whether officially or unofficially." (R. Doc. 77-1 at 6). In Opposition, Plaintiff argues the terms of retention have "no relevance to the evaluation of the defendants' good or bad faith based on the information available to them at the time they handled the claim." (R. Doc. 87 at 19). Further, Plaintiff asserts to the extent that information regarding the timing of retention of counsel is discoverable, the information may be obtained through, and has already been provided by, Plaintiff, and further information is not relevant. (R. Doc. 87 at 19).

The Court agrees with Plaintiff that requesting the attorney retention and fee agreements is overbroad as most of the information contained in the agreements is not relevant to Plaintiff's claims or Defendants' defenses. Defendants have requested, and have been provided with, the date

Plaintiff retained counsel. No further information contained in the attorney retention and fee agreements is relevant, so the request is overbroad. Further discovery into this topic is not appropriate.

**2. Powers of Attorney and Legal Authority**

The Subpoenas seek "[a]ll Powers of Attorney executed by or on behalf of Plaintiff Alexander Gipson, Jr. during the period of July 23, 2023 through November 30, 2025." Exhibit H, Request No. 2; Exhibit I, Request No. 2; Exhibit F, Request No. 5; Exhibit G, Request No. 5. The Subpoenas also seek "[a]ll written powers of attorney, durable powers of attorney, court orders, tutorships, custodianships, guardianships, interdiction proceedings, or other legally recognized instruments authorizing Alexius Richard to make binding legal demands or decisions on behalf of Alexander Gipson, Jr." Exhibit H, Request No. 3; Exhibit I, Request No. 3; Exhibit F, Request No. 6; Exhibit G, Request No. 6. Plaintiff has asserted no grounds upon which these documents are protected by attorney-client privilege, work product doctrine, or some other form of privilege or protection. Plaintiff does not have standing to object on the grounds of relevancy, so the Court overrules his objections.

**3. Correspondence with Insurer**

The Subpoenas seek "[a]ll letters of representation sent by [Plaintiff's counsel] to Integon, NGIC, and/or other insurance company on behalf of Alexander Gipson, Jr." and "[a]ll written demands for payment of policy limits, time-limited settlement demands, and/or other settlement demands or offers, made by [Plaintiff's counsel] upon Integon, NGIC, and/or any other insurance company in connection with Alexander Gipson, Jr.'s claims arising from the subject motor vehicle collision which occurred on July 23, 2023." Exhibit H, Request No. 4; Exhibit H, Request No. 5; Exhibit I, Request No. 4; Exhibit I, Request No. 5; Exhibit F, Request No. 7; Exhibit F, Request No. 8; Exhibit G, Request No. 7; Exhibit G, Request No. 8.

Further, the Subpoenas to Simien and Edwards seek "[a]ll other pre-suit correspondence sent by [the firm], or any of Plaintiff's attorneys, to Integon, NGIC, and/or other insurance company on behalf of Alexander Gipson, Jr." Exhibit H, Request No. 6; Exhibit I, Request No. 6. The Subpoenas to Richard and Ann Gipson request "[a]ll correspondence by you, Simien & Simien, L.L.C., John Bel Edwards Law Firm, LLC, or any other of Plaintiff's attorneys, to Integon, NGIC, and/or other insurance company on behalf of Alexander Gipson, Jr.," as well as all correspondence received from the insurers, for the period of July 23, 2023 through the present. Exhibit F, Request Nos. 9-10; Exhibit G, Request Nos. 9-10.

Communications with parties other than Plaintiff's counsel cannot be protected by attorney-client privilege. Plaintiff argues the discovery is "redundant, unnecessary, and a waste of time and resources," but Plaintiff does not have standing to assert these objections under Rule 45. However, the Court recognizes that the subpoenas in question request documents from Plaintiff's counsel who raised the current overbreadth argument. To minimize delays in discovery and the need for further court intervention, the Court will address Plaintiff's arguments. Defendants are already in possession of all documents sent by Plaintiff's counsel, Richard, or Ann Gipson to Defendants on behalf of Alexander Gipson, Jr., and Defendants have previously requested the same documents in party discovery from Alexander Gipson, Jr. *See* R. Doc. 83-4 at 43-44 (Integon Indemnity Corporation's First Set of Discovery Requests to Plaintiff, Request for Production No. 21 ("Produce a copy of all correspondences, including email communications, between Alexander Gipson, Jr. (including those purportedly acting on his behalf, including Alexius Richard and his counsel) and Integon from July 23, 2023 to the present.")); *see also* R. Doc. 83-3 at 38-39 (National General Insurance Company's First Set of Discovery Requests to Plaintiff, Request for Production No. 17 ("Produce all communications between Plaintiff (including Alexius Richard and any attorney acting on Plaintiff's behalf) and any entity Plaintiff contends to be NGIC, from July 23, 2023 to the

present, relating in any way to the claims arising from the collision or this litigation.”)). The above requests are therefore repetitive, unduly burdensome, and overbroad.

**4. Communications Regarding Plaintiff’s Claims**

The Subpoenas to Simien and Edwards seek “[a]ll documents and communications between [the firm], or any of Plaintiff’s attorneys, with Alexius Richard regarding the claims of Alexander Gipson, Jr. arising from the July 23, 2023 motor vehicle collision, including but not limited to the drafting, content, strategy, or transmission of the October 20, 2023 settlement demand letter and the September 9, 2023 cell phone video.” Exhibit H, Request No. 9; Exhibit I, Request No. 9. Further, the Subpoenas request “[a]ll documents and communications between [the firm], or any of Plaintiff’s attorneys, and Ann [Gipson] regarding the claims of Alexander Gipson, Jr. arising from the July 23, 2023 motor vehicle collision.” Exhibit H, Request No. 10; Exhibit I, Request No. 10. The Subpoenas to Richard and Ann Gipson also request “[a]ll documents evidencing contact by [the subpoena recipient] …with any attorney, paralegal, investigator, notary, or other individual or representative of Simien & Simien, L.L.C., John Bel Edwards Law Firm, LLC or any other attorney’s office during the period of July 23, 2023 through the present, regarding representation of Plaintiff Alexander Gipson Jr.” Exhibit F, Request No. 1; Exhibit G, Request No. 1.

As discussed above, Richard and Ann Gipson acted as Plaintiff’s representatives in certain communications with Plaintiff’s counsel. The content of these communications is protected by attorney-client privilege, but the date, time, and location of any contact or meetings are not protected. However, the Court cannot determine the applicability of the attorney-client privilege or the work product doctrine to specific documents with production of a privilege log. The Court will therefore defer ruling until a privilege log is provided and parties have had the opportunity to meet and confer regarding withheld documents.

The Subpoenas to Richard and Ann Gipson also request "[a]ll documents evidencing contact by [the subpoena recipient] or Alexander Gipson, Jr., … with any adjuster, agent, or representative of National General Insurance Company" and of Integon for the period of July 23, 2023 through the present. Exhibit F, Requestion Nos. 2-3; Exhibit G, Request Nos. 2-3. These documents are not protected by any privilege or protection, and since Plaintiff does not have standing to object to the topic on any other grounds, the Court will allow discovery into this topic.

**5. Releases**

The Subpoenas seek "[a]ll draft or signed releases executed by Alexander Gipson, Jr. or any authorized representative, provided to Integon and/or NGIC." Exhibit H, Request No. 7; Exhibit I, Request No. 7; Exhibit F, Request No. 11; Exhibit G, Request No. 11. These documents are not protected by any privilege or protection, and since Plaintiff has no other grounds upon which to object to the topic, the Court will allow discovery into this topic. Plaintiff's assertion the discovery is "technically relevant" but "unnecessary" and an "improper use of discovery against counsel" is inconsequential as Plaintiff does not have standing to object on these grounds. R. Doc. 87 at 22. The Court overrules Plaintiff's objections.

**6. Mental Capacity Assessment**

The Subpoenas seek "[a]ll independent medical or legal assessments confirming that Alexander Gipson, Jr. has the mental and legal capacity to authorize and ratify the contents of the correspondence sent by Alexius Richard to Integon and/or NGIC on or about October 20, 2023." Exhibit H, Request No. 8; Exhibit I, Request No. 8; Exhibit F, Request No. 12; Exhibit G, Request No. 12. Plaintiff solely makes an argument regarding the relevance of the requested documents, arguing the documents requested are not relevant as the defense regarding Plaintiff's alleged incapacity is not viable under Louisiana law. However, Plaintiff does not have standing to assert an objection to the subpoena under Rule 45 on the grounds of relevance, and since Plaintiff has

provided no other grounds upon which he objects to the topic, the Court will allow discovery into this topic. Plaintiff's objections are therefore overruled.

The Subpoenas to Richard and Ann Gipson also seek "[a]ll documents and communications reflecting, relating to, or evidencing your knowledge of Alexander Gipson, Jr.'s mental capacity, cognitive state, or ability to understand and authorize legal decisions at any time from July 23, 2023 through October 27, 2023…" Exhibit F, Request No. 14; Exhibit G, Request No. 14. Again, Plaintiff solely makes an argument regarding the relevance of the requested documents, arguing the documents requested are not relevant as the defense regarding Plaintiff's alleged incapacity is not viable under Louisiana law. However, Plaintiff does not have standing to assert an objection to the subpoena under Rule 45 on the grounds of relevance, and since Plaintiff has provided no other grounds upon which he objects to the topic, the Court will allow discovery into this topic. If any communications are withheld subject to attorney-client privilege, a privilege log must be provided.

**7. Video, Audio, and Photographic Recordings**

The Subpoenas to Richard and Ann Gipson seek "[a]ll video recordings, audio recordings, and photographs of Alexander Gipson Jr. made by you during the period July 23, 2023 through the present, relating to the subject motor vehicle accident, including but not limited to the video recorded on or about September 9, 2023, in which Alexander Gipson Jr. was asked whether he authorized you to discuss his insurance claim with Integon and/or NGIC." Exhibit F, Request No. 13; Exhibit G, Request No. 13. Plaintiff again solely makes an argument regarding the relevance of the requested documents, arguing the documents requested are not relevant as the defense regarding Plaintiff's alleged incapacity is not viable under Louisiana law. However, Plaintiff does not have standing to assert an objection to the subpoena under Rule 45 on the grounds of relevance, and since Plaintiff has provided no other grounds upon which he objects to the topic, the Court will allow discovery into this topic.

**8. The $15,000 Policy Limits Check**

The Subpoenas to Richard and Ann Gipson seek "[a]ll documents and communications relating to the $15,000 policy limits check issued by Integon and/or NGIC on or about November 14, 2023, including but not limited to any communications regarding the decision to accept, reject, or return the check, and any communications with any attorney, law firm, or other person regarding the same." Exhibit F, Request No. 15; Exhibit G, Request No. 15. As discussed above, Richard and Ann Gipson acted as Plaintiff's representatives in certain communications with Plaintiff's counsel. The content of these communications is protected by attorney-client privilege, but the date, time, and location of any contact or meetings are not protected. However, the Court cannot determine the applicability of the attorney-client privilege or the work product doctrine to specific documents with production of a privilege log. The Court will therefore defer ruling until a privilege log is provided and parties have had the opportunity to meet and confer regarding withheld documents.

**9. The Kisha Paul Assignment**

All four Subpoenas seek documents related to the January 7, 2026 assignment of claims between Kisha Paul and Alexander Gipson Jr. The Subpoenas to Simien and Edwards request "[a]ll non-privileged documents and communications relating to the Assignment, Transfer, Sale, and/or Other Conveyance of Interests, Rights, Causes of Action and Claims dated January 7, 2026 between Kisha Paul and Alexander Gipson Jr., including all drafts, communications with Kisha Paul regarding the assignment, and documents reflecting the negotiation, execution, and notarization of the assignment." Exhibit H, Request No. 13; Exhibit I, Request No. 13. The Subpoenas to Richard and Ann Gipson request "[a]ll documents and communications relating to the Assignment, Transfer, Sale, and/or Other Conveyance of Interests, Rights, Causes of Action and Claims executed by Kisha Paul and Alexander Gipson Jr. on or about January 7, 2026, including any communications with

attorneys, Kisha Paul, or any other person regarding the negotiation, drafting, execution, or terms of the assignment." Exhibit F, Request No. 16; Exhibit G, Request No. 16.

Plaintiff again solely makes an argument regarding the relevance of the requested documents, arguing the Plaintiffs do not have a valid legal or factual basis under which they can challenge the assignment. Since a discovery motion is not the proper mechanism to test the validity of a party's defense, the Court will not prohibit discovery into the topic. Additionally, Plaintiff does not have standing to assert an objection to the subpoena under Rule 45 on the grounds of relevance, and Plaintiff has provided no other grounds upon which he objects to the topic. Plaintiff's objections are therefore overruled.

**10. Witness Communications and visits to Plaintiff at Medical Facilities**

The Subpoenas to Simien and Edwards seek "[a]ll documents and communications between [the firm], or any of Plaintiff's attorneys, and all deposition and trial witnesses who provided any written and/or oral testimony regarding the claims of Alexander Gipson Jr. arising from the July 23, 2023 motor vehicle collision." Exhibit H, Request No. 11; Exhibit I, Request No. 11. They also seek "[a]ll visitor logs, sign-in records, notes, memoranda, billing records, and other non-privileged documents reflecting any visit by an attorney, paralegal, investigator, notary, or other individual at the direction of Plaintiff's counsel to Alexander Gipson Jr. at any hospital, rehabilitation facility, or medical facility between July 23, 2023 and the date of formal retention by Plaintiff." Exhibit H, Request No. 12; Exhibit I, Request No. 12. The Subpoenas to Richard and Ann Gipson seek "[a]ll documents and communications between you and any third party, including but not limited to Trevia Brown, Acquelyn Knighten, Trevon Parker, or any other witness to or person with knowledge of the Collision, relating to Alexander Gipson Jr.'s injuries, claims, or the handling thereof." Exhibit F, Request No. 17; Exhibit G, Request No. 17. Plaintiff argues this topic is not relevant but again does not have standing to bring this objection under Rule 45. Since Plaintiff has

provided no other grounds upon which he objects to the topic, the Court will allow discovery into this topic. Plaintiff's objections are therefore overruled.

**11. Insurance Industry Experience**

Finally, the Subpoenas to Richard and Ann Gipson seek "[a]ll documents reflecting your experience, training, or employment in the insurance industry, including but not limited to any positions held as an insurance adjuster, claims handler, or in any other capacity with any insurance company or adjusting firm." Exhibit F, Request No. 18; Exhibit G, Request No. 18.

Plaintiff again solely makes an argument regarding the relevance of the requested documents, arguing the documents requested are not relevant as the defense regarding "possible bad faith setup" is not viable under Louisiana law. However, Plaintiff does not have standing to assert an objection to the subpoena under Rule 45 on the grounds of relevance, and since Plaintiff has provided no other grounds upon which he objects to the topic, the Court will allow discovery into this topic. Plaintiff's objections are therefore overruled.

## III. Defendants' Request for Attorney Fees and Costs

Defendants seek reasonable expenses pursuant to Fed. R. Civ. P. 37(a)(5), which is applicable to motion to compel. If a motion to compel is granted in part and denied in part, "the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). As the instant motion is not a motion to compel, Defendants are not entitled to reasonable expenses under this motion, although it is granted in part and denied in part.

## IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion to Overrule Plaintiff's Objections to Defendants' Subpoenas Duces Tecum to Alexius Richard, Ann Gipson, Simien & Simien, LLC, and

John Bel Edwards Law Firm, LLC (R. Doc. 77) is **GRANTED** in part and **DENIED** in part as detailed above. Defendants may issue the subpoenas duces tecum to Alexius Richard, Ann Gipson, Simien & Simien, LLC, and John Bel Edwards Law Firm, LLC.

**IT IS FURTHER ORDERED** that each party will bear its own costs.

Signed in Baton Rouge, Louisiana, on October 21, 2026.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**